IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| ANGELA C. BAUER, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 7:17-cv-00128-M-BP |
| § | |
| NANCY A. BERRYHILL, § | |
| Acting Commissioner of the Social § | |
| Security Administration, § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE, NOTICE, AND ORDER**

Plaintiff Angela Bauer ("Bauer") filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for disability insurance benefits ("DIB") under Title II and Title XVI of the Social Security Act ("SSA"). ECF No. 1. After considering the pleadings, briefs, and the administrative record, the undersigned **RECOMMENDS** that Chief United States District Judge Barbara M.G. Lynn **AFFIRM** the Commissioner's decision.

**FINDINGS AND CONCLUSIONS**

**I.   STATEMENT OF THE CASE**

Bauer filed an application for DIB on July 13, 2015, alleging that her disability began on October 4, 2007. (Transcript ("Tr.") 11). She later amended the onset of disability to July 13, 2015 at the administrative hearing. *Id.* The Commissioner denied her claim initially on November 16, 2015, and denied it again on reconsideration on December 29, 2015. *Id.* Bauer requested a hearing, which was held on November 23, 2016, via video teleconference, before Administrative Law Judge ("ALJ") Susan Conyers, with Bauer and her non-attorney representative, Jeffery Owen,

present. *Id.* The ALJ issued her decision on April 27, 2017, finding that Bauer was not disabled. (Tr. 22).

In her decision, the ALJ employed the statutory five-step analysis and established during step one that Bauer had not engaged in substantial gainful activity since July 13, 2015, the alleged disability onset date. (Tr. 13). At step two, the ALJ determined that Bauer had the severe impairments of bipolar disorder, obesity, carpal tunnel syndrome, anxiety disorder, diabetes mellitus, osteoarthritis, degenerative joint disease, and disorders of the spine. *Id.* At step three, the ALJ found that Bauer's impairments did not meet or medically equal one of the impairments listed in 20 C.F.R. Pt. 404(p). (Tr. 14). In particular, the ALJ concluded that Bauer retained the residual functional capacity ("RFC") to perform light work. (Tr. 16). At step four, the ALJ determined that Bauer was unable to perform past relevant work. (Tr. 20). The ALJ cited representative professions from the Dictionary of Occupational Titles ("DOT"), taken from the testimony of the vocational expert ("VE"), that could be performed: mail sorter, laundry worker, or hand packer. (Tr. 21). As a result of the five-step analysis, the ALJ found that Bauer had not been under a disability, as defined in the Social Security Act, from July 13, 2015, through the date of her decision. (Tr. 22).

The Appeals Council denied review on March 7, 2017. (Tr. 1). Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review.").

## II.   FACTUAL BACKGROUND

According to Bauer's pleadings, testimony at the administrative hearing, and the administrative record, she was thirty-four years old on the alleged disability onset date, and thirty-five years old at the time of the administrative hearing. ECF No. 18 at 4. She completed the 10th

grade. *Id.* Her past relevant work included working as a fast-food worker and greeter. *Id.* Bauer asserts that her physical and mental impairments render her disabled under the SSA.

### III. STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 *et seq.*, of the SSA governs the disability insurance program in addition to numerous regulations concerning disability insurance. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as a "medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months" that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" means work activity involving the use of significant physical or mental abilities for pay or profit. *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *see Stone v. Heckler*, 752 F.2d 1099, 1100-03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to her past relevant work. 20 C.F.R. § 404.1520(e). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's RFC, age, education, and past work experience. *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999); 20 C.F.R. § 404.1520(f). "The claimant

bears the burden of showing that [she] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Before proceeding to steps four and five, the Commissioner must assess a claimant's RFC—"the most [a claimant] can still do despite [her] limitations." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1).

The Court's decision is limited to a determination of whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Audler*, 501 F.3d at 447; *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if evidence is present. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Harris*, 209 F.3d at 417. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (quoting *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)).

## IV. ANALYSIS

Bauer raises three issues on appeal. She claims (1) that the ALJ's RFC determination is not supported by substantial evidence; (2) that the ALJ improperly weighed the medical source opinions of record; and (3) that the ALJ did not consider her moderate deficiencies in

concentration, persistence, or pace in the RFC finding, and thus posed a defective hypothetical question to the VE.

### A. Substantial Evidence supports the ALJ's RFC determination.

First, Bauer argues that the ALJ improperly determined her RFC given her mental impairments. ECF No. 18 at 13. Specifically, Bauer argues that her Global Assessment of Functioning ("GAF") score of 50 indicates "serious symptoms" where an individual would be "unable to keep a job," and thus the ALJ's finding that Bauer's GAF score reflected moderate symptoms is reversible error. *Id.* (citing https://www.webmd.com/mentalhealth/gaf-scale-facts). In response, the Commissioner states that Bauer's mental status examination findings do not indicate that she has such "serious symptoms" or impairments in social, occupational, and school functioning. ECF No. 19 at 12.

"[F]ederal courts have declined to find such a strong correlation between an individual's GAF score and the ability or inability to work." *Jackson v. Colvin*, 2015 WL 7681262, at *3 (N.D. Tex. Nov. 5, 2015). Notably, "in the updated version of the [*Diagnostic and Statistical Manual of Mental Disorders*], the American Psychiatric Association no longer recommends the use of the GAF scale as a diagnostic tool for assessing a patient's functioning due to 'its conceptual lack of clarity . . . and questionable psychometrics in routine practice.'" *Spencer v. Colvin*, No. EP-15-CV-0096-DCG, 2016 WL 1259570, at *6 n.8 (W.D. Tex. Mar. 28, 2016) (quoting *American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013) ("DSM–V")). The ALJ sufficiently considered Bauer's GAF scores in the record. (Tr. 20). It is within the ALJ's province to resolve conflicts when a GAF score assigned by a consultative or treating physician's assessment conflicts with the treating source's own descriptions of the patient's mental symptoms and/or function. As this Court has previously noted, an "ALJ was not

5

required to accept [a consultative medical examiner's] assessment of plaintiff's GAF score [of 49] or explain the weight given to her opinions." *Hawkins v. Astrue*, 2011 WL 1107205, at *6 (N.D. Tex. Mar. 25, 2011). The ALJ's explanation—"that plaintiff's low GAF score was inconsistent with [the consultive medical examiner's] other findings"—satisfied the ALJ's duty under the regulations. *Id.* Accordingly, the ALJ's explicit discussion of Bauer's GAF scores satisfied her duty under the regulations, and reversal is not warranted on this point.

Second, Bauer argues that the ALJ's reliance on the State Agency Medical Consultants ("SAMC") who conducted Bauer's mental impairment evaluations, Dr. Matthew Turner and Dr. Leela Reddy, was in error because their reports did not consider Bauer's treatment at the Helen Farabee Center, the local provider of mental health services, from November 23, 2015 to August 18, 2016. ECF No. 18 at 15. Despite this omission, the SAMCs had sufficient evidence in the medical records they reviewed to determine the severity of Bauer's impairments. Dr. Turner's report indicates that he thoroughly reviewed the record before him before making his assessment. (Tr. 197–204). Dr. Reddy's report also reflects that she reviewed the record before making her assessment. (Tr. 229–246). Additionally, the records of Bauer's treatment after the SAMCs' assessment do not specify any limitations caused by her mental conditions that would call into question the SAMCs' assessment. Further, Bauer does not argue with particularity how those later medical records contradict the SAMC reports. *See Rollins v. Berryhill*, No. 7:17-CV-00136-BP, 2018 WL 2064781, at *6 (N.D. Tex. May 2, 2018). And importantly, the ALJ expressly incorporated the medical records from the Helen Farabee Center in making the RFC determination. (Tr. 18–19). Thus, reversal is not warranted on this ground.

Third, Bauer argues that the ALJ inaccurately noted that Bauer "reported no side effects from her psychiatric medications." ECF No. 18 at 18. She notes that other records show that she

mentioned a rash and drowsiness that might be caused by the medications she was taking at the time, including Seroquel, Trileptal, Gabapentin, and Lexapro. (Tr. 535, 544). Pursuant to 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv), the ALJ is required as part of the disability determination to consider "the type, dosage, effectiveness, and side effects of any medication" a claimant takes or has taken to alleviate pain or other symptoms. *Crowley v. Apfel,* 197 F.3d at 199. Thus, an ALJ errs if she does not evaluate side effects or symptoms allegedly caused by medication and their impact on the claimant's RFC. The ALJ in her RFC relied on records from the Helen Farabee Center, which expressly stated that Bauer "reports she has been taking her medications as prescribed and denies side effects." (Tr. 530).

Bauer asserts that the Fifth Circuit's decision in *Crowley v. Apfel* supports reversal, but that case is distinguishable from the facts of this case. In *Crowley*, the court remanded because the ALJ failed to adequately consider the side effects of claimant's prescription medications when the claimant's testimony indicated that those medications caused blurred vision, tremors, and diminished coherence. 197 F.3d at 199. Here, Bauer never complained that her side effects affected her ability to function, as the claimant had in *Crowley*. Bauer stated that she suffered from a rash and that her medication had helped her anxiety. (Tr. 544). Moreover, at the hearing before the ALJ, Bauer testified that her medications "keep [her] mind from racing" and allow her to "focus into what [she is] doing." (Tr. 183). Thus, unlike the claimant in *Crowley*, Bauer never testified nor argues now that the side effects of her medications negatively affected her. In this case, contrary to Bauer's arguments, the ALJ properly considered her side effects.

However, even if the ALJ erred in that evaluation, such error was harmless. Bauer does not cite any specific evidence in the record that shows that any decreased functioning was attributable to such side effects. The undersigned finds that any error committed by the ALJ in failing to take

7

into consideration side effects when formulating the RFC was harmless. *See Bassett v. Astrue,* No. 4:09–CV–142–A, 2010 WL 2891149, at *14 (N.D. Tex. June 25, 2010). Accordingly, reversal is not warranted on this ground.

### B. The ALJ properly weighed the medical source opinions of record.

Bauer alleges that the ALJ erred in not assigning controlling weight to the opinion of her treating physician, Dr. Ali, while giving substantial weight to non-treating physician opinions. ECF No. 18 at 19. Dr. Ali's "treating Physician Functional Assessment Questionnaire" reported that Bauer was unable to (1) walk for more than ten to fifteen minutes at a time; (2) lift, push, or pull objects weighing more than ten pounds; and (3) maintain gainful employment. ECF No. 18 at 19 (citing Tr. 489). Further, Dr. Ali's notes from February 5, 2016, state that Bauer had "tenderness of the DIP joints with warmth and redness, and reduced range of motion of the fingers," and that her diabetes was uncontrolled. Bauer argues that the ALJ's finding that her musculoskeletal examinations have been "essentially normal" with some tenderness and stiffness was in error. ECF No. 18 at 20–21.

In response, the Commissioner argues that Dr. Ali's "Functional Assessment Questionnaire" should not be accorded controlling weight because it was "brief or conclusory" in that it consisted only of x-marked findings without explanation. ECF No. 19 at 17. The undersigned agrees. The Fifth Circuit has found that when a treating physician's questionnaire is characterized by "its brevity and conclusory nature, lack of explanatory notes, or supporting objective tests and examinations," it may not be entitled to considerable weight. *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011); *see also Heck v. Colvin*, 674 F. App'x 411, 415 (5th Cir. 2017) ("We have previously characterized responses to a 'questionnaire format' as 'typi[cal] brief or conclusory testimony' and declined to accord these responses controlling weight[.]") (citing

8

*Foster*, 674 F. App'x at 415). Dr. Ali's questionnaire is conclusory, as there is no explanation of why Bauer is unable to maintain gainful employment based on her rheumatoid arthritis and diabetes. Thus, the ALJ did not err in not according it controlling weight. Additionally, the Commissioner argues that Dr. Ali's opinion is unsupported by the medical record. *Id.* at 18. Specifically, the Commissioner notes that the record includes multiple findings that Bauer has normal gait and normal range of motion of all major muscle groups with intact reflexes and sensation and no pitting edema in her lower exterminates. *Id.* The ALJ did not err in concluding that Dr. Ali's "extreme limitations" were not supported by the medical record. (Tr. 19).

When faced with inconclusive or controverting evidence, an ALJ must perform a detailed six-factor analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2) or otherwise seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. 404.1512(e). *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). However, the court in *Newton* found error because the ALJ exclusively relied on the opinions of a non-treating, non-examining physician who did not review all significant records and did not take into account contrary statements from examining physicians. 209 F.3d 448, 456–57 (5th Cir. 2000). Here, the ALJ considered all evidence of record, including Dr. Ali's opinions, in concluding that Bauer was not disabled. That review also included records from Wichita Falls Family Health Center and the Helen Farabee Center; the opinions of Dr. Almustafa and Dr. Kownacki; the opinions of the State agency consultants; and the subjective complaints of Bauer herself. (Tr. 17–20).

As to Bauer's physical impairments, Dr. Almustafa found that Bauer "is able to do her daily activities of daily living," "there is no joint deformity, no bone or tissue destruction," "normal gait," and that Bauer's alleged disabling pain "cannot be explained by history or exam." (Tr. 487).

9

Dr. Spoor and Dr. Herman, the SAMCs who conducted Bauer's physical impairment evaluations, found that Bauer would be able to work, stand/walk and sit six hours in an eight-hour work day and lift/carry twenty-five pounds frequently. (Tr. 213, 230). Dr. Kownacki's psychological evaluation of Bauer summarized her history of mental illness and subjective complaints, and included a diagnosis of unspecified bipolar disorder, alcohol use disorder, and borderline personality traits. (Tr. 479–481). Dr. Turner and Dr. Reddy also concluded that Bauer had mild restrictions of activities of daily living, moderate difficulties in pace, and no repeated episodes of decompensation. (Tr. 202; 233). None of these additional opinions directly contradicted Dr. Ali's opinion regarding Bauer's medical condition.

An ALJ can "rely on a non-examining physician's assessment when, as in this case, those findings are based upon a careful evaluation of the medical evidence and do not contradict those of the examining physician." *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990). In *Villa*, the court noted that reports from non-examining physicians do not provide substantial evidence when those reports constitute the sole medical evidence presented or when a non-examining physician makes specific medical conclusions that contradict or are unsupported by findings made by an examining physician. Neither is true in this case. Bauer argues that the SAMCs' reports indicating that she could lift and carry fifty pounds occasionally and twenty-five pounds frequently were contrary to Dr. Ali's findings. *Id.* However, these findings do not directly contradict Dr. Ali's medical opinions, and importantly, the ALJ specifically assigned these SAMC reports "little weight" because the opinions were "overly optimistic" given the fact that Bauer has "back pain, joint tenderness and stiffness." (Tr. 19–20). Accordingly, reversal is not warranted on this ground.

## C. The ALJ did not fail to account for Bauer's moderate difficulties in concentration, persistence, or pace, either in her question to the VE or her RFC determination.

Bauer argues that the ALJ erred by not accounting for her moderate difficulties in

concentration, persistence, or pace, either in her question to the VE or her RFC determination. ECF No. 18 at 21. Specifically, she contends that the ALJ did not properly account for Bauer's actual limitations in the RFC findings and the hypothetical question to the VE that only mentioned that she was limited to "simple tasks and routine tasks consistent with unskilled work." *Id.*

"The hypothetical question that an ALJ poses to a VE need only incorporate the disabilities that the ALJ recognizes." *Gardner v. Massanari*, 264 F.3d 1140, 2001 WL 822457, at *2 (5th Cir. 2001) (citing *Bowling*, 36 F.3d at 435).

> If the ALJ's hypothetical example omits a recognized limitation but "the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question)," there is no reversible error.

*Id.* (quoting *Bowling*, 36 F.3d at 436); *see also Monroe v. Shalala*, 55 F.3d 633, 1995 WL 313965, at*7 (5th Cir. 1995) ("If the claimant is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions, there is no reversible error."); *but see Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001) (holding that an incomplete hypothetical is not automatically saved solely because a claimant fails to point out its deficiencies at the hearing).

Bauer relies heavily on Seventh Circuit cases to argue that omitting the terms "concentration, persistence, or pace" is error unless "it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." (Pl.'s Br. 18 at 22) (citing *Simila v. Astrue*, 573 F.3d 503, 522 (7th Cir. 2009)). However, the Fifth Circuit does not place such a requirement on ALJs. The Fifth Circuit has held that an RFC assessment that reasonably incorporates a claimant's limitations is sufficient to uphold

an RFC determination. *Herrera v. Comm'r of Soc. Sec.,* 406 F. App'x 899, 904 (5th Cir. 2010) (per curiam) (finding that an ALJ's determination that a claimant "would be able to understand, remember, and carry out routine step instructions and respond appropriately to supervisors and coworkers in jobs that do not require independent decision making" adequately accommodated the claimant's moderate limitation in concentration, persistence, and pace); *Bordelon v. Astrue*, 281 Fed. App'x 418, 422–423 (5th Cir. 2008) (per curiam) (rejecting other circuit's reasoning regarding what is required to reasonably incorporate a finding of moderate difficulties in maintaining concentration, persistence, and pace, into an RFC).

In her RFC, the ALJ considered Bauer's testimony regarding her mental impairments and limitations in daily activities, psychological evaluations from various doctors, and other medical records. (Tr. 17–20). In her hypothetical question to the VE, the ALJ asked about an individual who would be "restricted to simple tasks and routine tasks consistent with unskilled work involving no interaction with the general public." (Tr. 189). While the ALJ did not specifically state that Bauer had moderate limitations in concentration, persistence, and pace, she was only required to reasonably incorporate that limitation in the hypothetical. *Barr v. Astrue*, No. 3:11-cv-1349-BF, 2012 WL 2358307, at*4–5 (N.D. Tex. June 21, 2012) (concluding that a mental RFC limiting the plaintiff to "simple, routine tasks" was supported by substantial evidence even though the plaintiff had a moderate limitation in concentration, persistence, and pace); *Acosta v. Astrue*, 865 F. Supp. 2d 767, 790 (W.D. Tex. 2012) (finding an RFC was sufficient that determined a plaintiff could perform "the full range of medium work" despite her mild limitation in concentration, persistence, and pace).

The ALJ's findings regarding Bauer's mental limitations at step two need not match the RFC determinations, as one has to do with impairments and the other with function. Rather, the

analysis taken at the earlier steps provides substantial evidence for the later RFC assessment. *See Hardman*, 820 F.3d at 149 & n.3. Similar cases in the Northern District of Texas have held that reversal is not required where the ALJ does not explicitly include the phrase "moderate limitations" in the VE questions or the RFC. *E.g. Holmes v. Astrue*, No. 3:11-CV-2634-G BH, 2013 WL 638830, at *16 (N.D. Tex. Jan. 25, 2013), *report and recommendation adopted*, No. 3:11-CV-2634-G BH, 2013 WL 646510 (N.D. Tex. Feb. 20, 2013) (affirming the Commissioner where the ALJ found "that Plaintiff's moderate limitation in maintaining concentration, persistence, or pace restricted his RFC only to the extent that he could concentrate for two-hour intervals and understand, remember, and carry out detailed, but not complex, instructions"); *Westover v. Astrue*, No. 4:11-CV-816-Y, 2012 WL 6553102, at *9 ("Based on the facts in this case, the ALJ's RFC determination limiting [claimant] to only performing work that involved detailed instructions does not appear to be inherently contradictory with the ALJ's finding in the 'special technique' that [claimant] was moderately limited in his ability to maintain concentration, persistence, or pace."); *Hodgson v. Astrue*, No. 4:07-CV-529-Y, 2008 WL 4277168, at *8 (N.D. Tex. Sept. 16, 2008) ("[Claimant] has not demonstrated that a restriction to simple one- and two-step tasks did not adequately accommodate her moderate difficulty maintaining concentration, persistence or pace."). Likewise, here, the ALJ did not commit error by not including moderate difficulties in concentration, persistence, or pace in her question to the VE or her RFC determination, because the functional limitations she did include accounted for those moderate difficulties and were based on the evidence.

However, even if the ALJ erred in failing to include limitations in the hypothetical she posed to the VE, this error would be harmless. Under Fifth Circuit precedent, "if the administrative law judge's hypothetical omits a recognized limitation 'and the claimant or his representative is

13

afforded the opportunity to correct deficiencies in the administrative law judge's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions there is no reversible error.'" *Fitzpatrick v. Colvin*, 2016 WL 1258477 at *12 (citing *Wise v. Barnhart*, 101 Fed. App'x 950, 951 (5th Cir. 2004) (per curiam)). Here, Bauer's non-attorney representative was afforded an opportunity at the hearing to cross-examine the VE and to correct deficiencies in the ALJ's hypothetical question by suggesting to the expert any purported defects in the hypothetical question, but declined to cross-examine the VE. (Tr. 59). Accordingly, any deficiency in the ALJ's hypothetical to the VE was not reversible error, and remand is not warranted on this ground.

## V.  CONCLUSION

The ALJ's RFC determination that Bauer is not disabled is supported by substantial evidence. Further, the ALJ properly weighed the medical opinions of record, and properly considered Bauer's moderate deficiencies in concentration, persistence, or pace in making her RFC determination and posing hypothetical questions to the VE.

## RECOMMENDATION

The undersigned **RECOMMENDS** that Chief United States District Judge Lynn **AFFIRM** the Commissioner's decision.

**NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT**

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's Findings, Conclusions, and Recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's Findings, Conclusions,

and Recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

### ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party shall have until **August 10, 2018,** to serve and file written objections to the United States Magistrate Judge's Findings, Conclusions, and Recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the Chief United States District Judge.

Signed July 27, 2018.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE